No. 5984.

H. D. BUCHANAN *v.* THE STATE.

1. THEFT—CHARGE OF THE COURT.—To inculpate an accused as a prin-
   cipal offender in theft, the State must show that he had some connec-
   tion with or complicity in the taking of the property. It does not
   suffice to prove that, subsequent to the taking. and without complicity
   therein, but with knowledge that the property had been stolen, he
   aided the taker to dispose of it. or fraudulently disposed of it himself.
   See the opinion for a summary of proof which demanded of the trial
   court a charge in harmony with this rule.
2. SAME—EVIDENCE—BILL OF SALE.—See the opinion for a state of case
   whereunder the trial court erroneously refused to admit in evidence a
   bill of sale conveying to the accused the animal described in the in-
   dictment.
3. SAME.—See the statement of the case for evidence *held* insufficient to
   support a conviction for theft, because inadequate to establish the
   guilty participation of the accused in the taking of the animal.

APPEAL from the District Court of Tom Green.  Tried below
before the Hon. J. C. Randolph.

The conviction in this case was for the theft of one head of
cattle, the property of B. F. Byrd, in Tom Green county, Texas,
on the third day of November, 1887. The penalty assessed was
a term of two years in the penitentiary.

B. F. Byrd was the first witness for the State. He testified
that he lived on Rocky creek, in Tom Green county, Texas,
and was engaged in the sheep business, owning no other stock
than a yoke of oxen. He lost that yoke of oxen in 1886, soon
after he settled in Tom Green county. He settled in the said
county early in the said year. As soon as he discovered his
loss he employed Mr. E. E. Davidson, a live stock agent, to ad-
vertise for the missing animals. During the month of April,
1886, Mr. Davidson informed the witness that one of the said
oxen was in Hill's pasture, near San Angelo. Witness went to
the said pasture and found his ox, which he removed to the
pasture of Patterson & Williams, on the North Concho river,
in Tom Green county. He afterwards searched the said pas-
ture for the said animal, but failed to find it and had not seen
it since he put it in the said pasture. The said ox was a large

black animal, nine or ten years old, branded J on the left hip, and marked with a crop and split in each year. About two months prior to this trial the witness received notice from Mr. E. E. Davidson concerning the whereabouts of his said animal. Witness did not know the defendant, and had never given his consent to the taking of the said animal to the defendant or to any other person. A man named Mays had charge of Patterson & Williams's pasture when the witness put the steer in said pasture, and witness arranged to pay Mays for pasturage whenever he should take his animal out. He also wanted Mays to guarantee the safety of the animal, which Mays refused to do. Witness had never paid Mays the pasturage for his animal, because he had never gotten his ox. Mays never had any care or control of the animal—refusing to take any charge of the same when he refused to assume any responsibility for his safety.

E. E. Davidson testified, for the State, that he resided in San Angelo, Texas, and was engaged in the land and live stock business. Early in 1886, Mr. Byrd gave him the description of a yoke of oxen he had lost, directing witness to advertise for them. Soon afterwards the witness found the animal described by Byrd on this trial, in Hill's pasture, and notified Byrd. The defendant occupied the office of hide and cattle inspector of Tom Green county.

J. W. Miles testified, for the State, that he did not know the prosecuting witness Byrd. Early in the year 1887, the witness saw a large black steer, nine or ten years old, branded J on the left hip, in his father's pasture. That steer answered the description given by Mr. Byrd on this trial of the animal he lost. Sam Moore told witness that he and this defendant put that animal in the witness's father's pasture. Witness had frequently seen Sam Moore and the defendant together in the said pasture. He had not seen the said animal for some time, and did not know when it was taken away, nor by whom.

Sam Moore testified, for the State, that he knew the defendant, and knew the steer described in the indictment. Witness and defendant got that steer out of Lee's pasture about a year prior to this trial, and put it in Miles's pasture near San Angelo. When defendant went with witness to help drive the animal from Lee's pasture to that of Miles, he asked witness where the animal came from, and witness told him that it came from the Big Lake country, and belonged to a Mexican. A short time prior to this trial (which was had in December, 1887,)

defendant told witness that he was going to take the animal and sell him to the butchers. At this point the witness was shown a bill of sale executed by the defendant, and conveying a steer to Woodie, which he declared to be written in the handwriting of the defendant, and to describe the animal which he, witness, and defendant took from Lee's pasture and put in Miles's pasture.

John Voss testified, for the State, that, in November, 1887, he was in the employ of Antonio Woodie, managing the butcher business of the said Woodie in San Angelo. On the third day of that month the witness, acting for the said Woodie, bought from the defendant a certain large black steer, which corresponded in every particular with the description given by Byrd of the animal stolen from him some time before. He agreed to pay the defendant twelve dollars for the steer. He paid him in part, and sent him to Woodie for the balance, first taking defendant's bill of sale for the animal. Defendant told witness at the time of the purchase that he had put the steer in the slaughter pen, where the witness afterwards found and slaughtered it. Defendant once prosecuted the witness for selling diseased meat, and while the witness did not think defendant treated him right on that occasion, witness was not now unfriendly to him.

Antonio Woodie testified, for the State, that his agent, Voss, on or about November 3, 1887, bought a beef for him from the defendant, for which, upon Voss's order, witness paid defendant a balance of six dollars.

The State, proving first the handwriting of the defendant, at this point read in evidence the bill of sale referred to by the foregoing witnesses, which, caption omitted, reads as follows:

Know all men by these presents that I, Herff D. Buchanan, have this day bargained, sold and delivered to Antonio Woodie one black steer, branded J on the left hip, and marked crop and split in each ear; and I hereby bind myself to defend all or any claims against said steer.

HERFF D. BUCHANAN.

Ed. S. Lyell was the defendant's only witness. He testified that in August, 1887, the defendant, accompanied by a Mexican, whom the witness did not know, came into his saloon and

handed him a paper, with the request, "Ed., witness this."
Witness wrote his name on the paper as a witness.

On cross examination, the witness said that defendant did
not say what the paper was or what writing it contained.
Witness did not read the paper.   He recognized the bill of sale
now handed him, which purports to be a bill of sale to H. D.
Buchanan, only by his, witness's, name, which witness wrote
himself on the occasion referred to.

At this point the defense offered in evidence the bill of sale
identified by Lyell.   It purported to have been signed by Jesus
Gonzales, and to convey to H. D. Buchanan a certain black
steer, branded J on the left hip.   The bill of sale was excluded
by the court.

The motion for new trial raised the questions discussed in the
opinion.

*Mays & Wright,* for the appellant.

*W. L. Davidson,* Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE.   On the trial the State's witness
Sam Moore testified that about a year before the trial, *he, wit-
ness,* got the alleged stolen steer out of Lee's pasture and put
him in Miles's pasture; that defendant was with him and
*helped him* to drive and put the steer in Miles's pasture.   He
does not say that defendant knew that the steer was not his,
the witness's, property, and that, so knowing, he aided him to
take and steal it.   On the contrary, he says that defendant
asked him where the steer came from, and he told him the steer
came from the Big Lake country and belonged to a Mexican.

It appears from this testimony that, if the steer was then
stolen, it was stolen by Moore, and that defendant was ignorant
of Moore's fraudulent intent.   In this aspect of the case, the
court should, in substance, have instructed the jury that if the
taking was by Moore, and defendant *helped* Moore, and partici-
pated in the taking and driving without knowing Moore's
fraudulent intent, then any subsequent fraudulent participancy
in the disposition of the animal, or wrongful connection with it
after it had been stolen by Moore, would not constitute theft on
his part.   " To inculpate a defendant as a principal offender in
the crime of theft, the State must show he had some connection

with or complicity in the taking of the property. It does not suffice to prove that, subsequently to the taking, and without complicity therein, but with knowledge that the property had been stolen, he aided the taker to dispose of it," or disposed of it himself fraudulently. (Boyd v. The State, 24 Texas Ct. App., 570, and authorities cited.)

Again, the court erred in refusing to permit the defendant to introduce in evidence his bill of sale for the animal from Jesus Gonzales, the Mexican. The witness, Lyell, testified that defendant and a Mexican came to his place of business, and defendant, in the presence of the Mexican, requested him to witness the bill of sale, which he did. This was some time in August last. Lyell did not know the Mexican, and the Mexican said nothing. But, as we have seen, Moore had previously told defendant that the animal belonged to a Mexican, and it was some months after this bill of sale was witnessed by Lyell before defendant sold the animal to Woodie and executed his bill of sale, which was dated the third day of November, 1887.

As to the defendant's guilty participancy in the original taking of the animal from the alleged owner, Byrd, we are of opinion the evidence is insufficient, as is also the charge of the court upon that phase of the case, and we are further of opinion the court erred in refusing to admit in evidence defendant's bill of sale from the Mexican, Gonzales.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*